449 A.2d 577

COMMONWEALTH of Pennsylvania ex rel. Rhoda COOK

v.

**Albert COOK, Appellant.**

Superior Court of Pennsylvania.

Argued March 19, 1980.

Filed Aug. 6, 1982.

Charles M. Golden, Philadelphia, for appellant.

Lewis Kates, Philadelphia, for Commonwealth, appellee.

Before PRICE, CAVANAUGH and WATKINS, JJ.

PRICE, Judge:

The instant appeal is from an order directing, *inter alia*, enforcement of a prior support order entered by the court below. For the reasons stated herein, we affirm.

The circumstances leading to this appeal are these. Albert and Rhoda Cook were married in 1953. They are the parents of two children: Hillary, born February 16, 1957, and Jonathan, born January 2, 1962. Appellant and his wife separated on or about January 1, 1968 and, on February 16, 1968, Mrs. Cook filed a complaint in the court of common pleas seeking support for herself and the two children. An order directing appellant to pay $1200 a month for the combined support of his wife and children was entered by the court below on July 1, 1968.

On July 11, 1972, the parties concluded a marital settlement agreement which provided, *inter alia*, that appellant would pay $200 a month for the support of the children and $1200 a month for the support of Mrs. Cook.[1] The parties were divorced on September 1, 1972 and, on September 22, 1972, the court below modified the original support order by

---

1. In addition to the monthly support payments, appellant agreed to pay his wife $100,000 in a lump sum upon the entry of a final decree in divorce within five months of the date on which the settlement agreement was executed. Monthly payments to Mrs. Cook would terminate in the event of her remarriage. Furthermore, monthly payments for the support of the children would be modified if either child married, completed college, or was emancipated. The agreement also provided for an increase to $800 a month in the amount of support for the children if Mrs. Cook remarried. (Record at 10a–14a).

entering a new order incorporating the child support provisions of the marital settlement agreement.

On March 22, 1978, appellant filed a petition to reduce the amount of support, alleging that the parties' daughter was emancipated. Appellee filed an answer, new matter, and a counterclaim to the petition, denying the daughter's emancipation and seeking an increase in the amount of support. Before the matter could be heard by the court below, however, the parties resolved their differences, and, in a letter to the Honorable Robert W. Honeyman dated December 14, 1978, set out their resolution. Appellant agreed to withdraw his petition seeking reduction of the amount of support, and appellee agreed to withdraw her counterclaim for increased support upon the following conditions:

(a) The support as provided by the Order of this Court [dated September 22, 1972] *and the payments as provided by the Agreement between the parties dated July 11, 1972* shall continue without remission, reduction or abatement;

(b) On or before December 22, 1978, the defendant shall pay to the plaintiff the sum of $500.00, *pursuant to the terms of Paragraph 2 of the Agreement of July 11, 1972*;

(c) On or before January 15, 1979, the defendant shall pay to the plaintiff the further sum of $500.00, *pursuant to Paragraph 2 of the Agreement between the parties dated July 11, 1972*;

. . . .

(e) The *defendant will make all payments required by him to be made pursuant to the Agreement of July 11, 1972 timely.*

(Record at 73a–74a) (emphasis added).[2] On December 15, 1978, Judge Honeyman entered an order incorporating the terms of the letter he received from the parties and dismissing appellant's petition and appellee's counterclaim. In addition, the chief domestic relations officer of Montgomery County and his assistants were directed to enforce the order. (Record at 74a). No appeal was taken from this order.

2. Appellee's promise to withdraw her counterclaim was also conditioned upon appellant's payment of an outstanding balance of $97.17 on a debt owed a contractor. (Record at 74a).

Despite the parties' agreement on December 14, 1978, and the incorporation of the terms of that agreement in Judge Honeyman's order of December 15, 1978, appellant thereafter failed to make the required monthly payments of $1200 for the support of his former wife.[3] Accordingly, on May 4, 1979, appellee filed a petition to cite appellant for contempt and to enter judgment for the support arrearage. A hearing on the petition was held on June 13, 1979. Appellant, however, failed to appear and, at the close of the hearing, the court below issued a bench warrant for his arrest.[4] On June 15, 1979, the court below issued an order which provided, in pertinent part, that:

1. The Order of this Court dated December 15, 1968 [sic: 1978] is a final Order for support entered by Agreement of the parties.

2. In accordance with that Order from which no appeal has been taken, the defendant was to pay to the plaintiff on the first day of each month, commencing January, 1979, the sum of $1400.00 as support for the minor son Jonathan Cook and was in addition to pay to the plaintiff for the same purposes the sum of $500.00 on or before April 15, 1979 and quarterly thereafter.

3. The defendant Albert Cook has made payments of $200.00 per month and as of the date of this Order is in arrears under the Order of December 15, 1978 in the sum of $7,700.00.

. . . .

3. Appellant also failed to make a quarterly payment of $500 required by the order of December 15, 1978 and the July 11, 1972 marital settlement agreement. He did, however, make monthly payments of $200 for the support of the two children.

4. On the day before the hearing, counsel for appellant requested a continuance of sixty days because his client was recuperating from a serious heart attack. The court below offered to continue the matter if appellant paid one-half of the arrearage. No payment was forthcoming, however, and the hearing was held as scheduled. At the hearing, appellant's counsel informed the court that appellant had chosen not to attend the hearing on the advice of his physician. (N.T. 12, June 13, 1979).

5. Final Judgment of the said arrearages in the amount of $7,700.00 is entered in favor of the plaintiff Rhoda Cook and against the defendant Albert Cook.

. . . .

8. This Order and the judgment entered for the arrearages is independent of the bench warrant that has been issued by this Court by reason of the defendant's willful failure and refusal to appear at the hearing on June 13, 1979, although the said defendant has submitted to the jurisdiction of this Court and was represented at the hearing by counsel of his choosing, whose appearance was entered generally.

(Record at 109a–110a). It is this order that appellant now challenges.

Appellant's first and principal contention is that the court below lacked subject matter jurisdiction to enter and enforce an order directing payment of spousal support following the parties' divorce. Arguing that his obligation to pay alimony to his former wife was created by the parties' marital settlement agreement and thus was purely contractual in nature, appellant asserts that appellee's proper remedy to enforce that obligation was not an action for support, but rather an action in assumpsit or in equity for specific performance. Appellant thus concludes that, in this action for support,[5] the court below was without subject matter jurisdiction to enforce a private agreement providing for payment of alimony and, therefore, the order of June 15, 1979 was erroneously entered.

Had appellant raised this jurisdictional argument on direct appeal *from the order of December 15, 1978*, it might well have been favorably received. Prior to the enactment of the Divorce Code in 1980,[6] it was well estab-

5. Appellee commenced her action for support pursuant to the Act of June 24, 1939, P.L. 872, § 733, *as amended*, 18 P.S. § 4733, repealed and replaced by the Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 4322.

6. The Divorce Code, Act of April 2, 1980, P.L. 63, No. 26, 23 P.S. § 101 *et seq.* Section 501 of the Divorce Code authorizes the court

lished that the substantive right of a spouse to support terminated upon entry of a final decree in divorce. *Commonwealth ex rel. Werline v. Werline*, 280 Pa.Superior Ct. 572, 421 A.2d 1080 (1980); *Commonwealth ex rel. Smith v. Smith*, 260 Pa.Superior Ct. 203, 393 A.2d 1224 (1978); *Commonwealth ex rel. Jones v. Jones*, 216 Pa.Superior Ct. 1, 260 A.2d 809 (1969). An obligation to support a former spouse could only be created by contract, and could not, therefore, be enforced in an action for support. *Commonwealth ex rel. Werline v. Werline, supra; Commonwealth ex rel. Jones v. Jones, supra.* The proper remedy was an action in assumpsit, *Commonwealth ex rel. Platt v. Platt*, 227 Pa.Superior Ct. 423, 323 A.2d 29 (1974); *Commonwealth ex rel. Bonicker v. Bonicker*, 205 Pa.Superior Ct. 191, 208 A.2d 14 (1965), or, in appropriate circumstances, in equity for specific performance. *See Silvestri v. Slatkowski*, 423 Pa. 498, 224 A.2d 212 (1966); *Sarsfield v. Sarsfield*, 251 Pa.Superior Ct. 516, 380 A.2d 899 (1977).

■ From these principles, it is at once apparent that the court below lacked jurisdiction of the subject matter to enter the order of December 15, 1978, at least insofar as that order required payment of alimony.[7] This is so because appellee's substantive right to support from appellant terminated upon the parties' divorce in September, 1972. Her *contractual* right to support from her former husband, created as it was by the marital settlement agreement, was thus unenforceable in this action for support. *Commonwealth ex*

to award reasonable alimony when it determines that the party seeking alimony lacks sufficient property for his or her reasonable needs and is unable to support himself or herself through appropriate employment. 23 P.S. § 501.

7. This conclusion is not altered by the fact that the order of December 15, 1978, was predicated upon, and incorporated, the terms of the agreement of the parties as set out in the December 14, 1978 letter to Judge Honeyman, and thus was entered by consent of the parties. It is axiomatic that subject matter jurisdiction cannot be conferred upon the forum by the consent of the litigants. *Appeal of Kramer*, 445 Pa. 238, 282 A.2d 386 (1971); *Lashe v. Northern York County School District*, 52 Pa. Commonwealth Ct. 541, 417 A.2d 260 (1980).

*rel. Werline v. Werline*, 280 Pa.Superior Ct. 572, 421 A.2d 1080; *Commonwealth ex rel. Jones v. Jones*, 216 Pa.Superior Ct. 1, 260 A.2d 809. Had appellant appealed from the order of December 15, 1978, therefore, that order should have been vacated to the extent that it required payment of alimony.

■ The validity of the order of December 15, 1978 is not here at issue, however, since no appeal was taken from that order. The question posed in this appeal is whether the court of common pleas, having once ordered payment of ' alimony, was empowered to enforce that order in a subsequent proceeding notwithstanding its lack of subject matter jurisdiction. We believe the answer must be in the affirmative.

■ "[A]lthough a court may have no jurisdiction over a particular subject matter, it may have jurisdiction to determine the question of its own jurisdiction, and an unappealed final determination of its subject matter jurisdiction—albeit erroneous—is *res judicata* as to those litigants." *Connellsville Township Supervisors v. City of Connellsville*, 14 Pa. Commonwealth Ct. 532, 535, 322 A.2d 741, 742 (1974) (citations omitted). This principle, long recognized in this Commonwealth and other forums,[8] reflects judicial concern for finality of judgments, even when said judgments have been rendered by a court without jurisdiction of the subject matter. *See Hodge v. Hodge*, 621 F.2d 590 (3d Cir. 1980), *citing* Restatement (Second) of Judgments § 15 (Tent. Draft No. 6, 1979). Styled the "bootstrap principle" by one commentator, it has been explicated thus:

8. *E.g., United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Hodge v. Hodge*, 621 F.2d 590 (3d Cir. 1980); *Dyndul v. Dyndul*, 620 F.2d 409 (3d Cir. 1980); *Bartron v. Northampton County*, 342 Pa. 163, 19 A.2d 263 (1941); *Strauss v. W. H. Strauss and Co.*, 328 Pa. 72, 194 A. 905 (1937); *Pulaski Avenue*, 220 Pa. 276, 69 A. 749 (1908); *Kase v. Best*, 15 Pa. 101 (1850).

[W]hen a court decides that it has jurisdiction in a case pending before it, its decision in favor of its own jurisdiction is res judicata and cannot be collaterally attacked. The court has jurisdiction to determine its own jurisdiction,[9] and hence its decision on this point is valid even if erroneous. That decision may be reversed on appeal, but if not, it is res judicata, and the issue of that court's jurisdiction cannot again be questioned by the parties or their privies.

Dobbs, *The Validation of Void Judgments: The Bootstrap Principle*, 53 Va.L.Rev. 1003, 1241–42 (Part II) (1967) (footnote omitted). Furthermore, the issue of subject matter jurisdiction is res judicata even though it was not litigated in the first instance or, indeed, even though the matter was wholly uncontested. *"[R]es judicata* may be pleaded as a bar, not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, 'but also as respects any other available matter which might have been presented to that end.' " *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940), *quoting, Grubb v. Public Utilities Commission,* 281 U.S. 470, 479, 50 S.Ct. 374, 378, 74 L.Ed. 972 (1930). *See Drummond v. Drummond,* 414 Pa. 548, 200 A.2d 887 (1964).

Instantly, the court of common pleas tacitly determined that it had jurisdiction of the subject matter when it entered the order of December 15, 1978. That jurisdictional determination was not directly attacked by an appeal from that

9. It is perfectly clear that any court may hear a motion to dismiss the case at hand for want of jurisdiction. It has jurisdiction, then, to decide that it has no jurisdiction and to dismiss. But if a court has jurisdiction to decide one way about an issue, it has jurisdiction to decide the other way. If it has jurisdiction to decide correctly, it has jurisdiction to decide erroneously.... Therefore, under settled rules, if a court has jurisdiction to dismiss for want of jurisdiction, it has jurisdiction to retain the case. It may be error to dismiss or to retain the case; but in either event it has jurisdiction to decide the issue.
Dobbs, *The Validation of Void Judgments: The Bootstrap Principle,* 53 Va.L.Rev. 1003, 1011–12 (Part I) (1967) (footnote omitted).

order, even though it was apparent on the record that the court below did not have subject matter jurisdiction. Accordingly, the court's finding as to its subject matter jurisdiction, although erroneous, is res judicata as to these litigants, and cannot now be challenged in this appeal from the order *enforcing* the order of December 15, 1978. *Cf. Commonwealth ex rel. Durso v. Durso,* 292 Pa. Superior Ct. 94, 436 A.2d 1021 (1981) (court of common pleas had jurisdiction of subject matter to enforce private agreement concerning child support where terms of agreement were made part of court's order by consent of parties at prior hearing on the matter).

■ Appellant's other allegations of error are of no moment. First, his claim that the court below lacked *in personam* jurisdiction because he was not personally served with appellee's petition was not raised in appellant's preliminary objections filed in response to the petition. (Record at 80a–81a).[10] Preliminary objections are the exclusive means by which to raise the question of *in personam* jurisdiction, *Monaco v. Montgomery Cab Co.,* 417 Pa. 135, 208 A.2d 252 (1965); *Encelewski v. Associated—East Mortgage Co.,* 262 Pa. Superior Ct. 205, 396 A.2d 717 (1978); *Lox, Stock and Bagel, Inc. v. Kotten Machine Co.,* 261 Pa.Superior Ct. 84, 395 A.2d 954 (1978), and the failure to so raise the question of personal jurisdiction constitutes a waiver of that defense. Pa.R.C.P. 1032; *Yentzer v. Taylor Wine Co., Inc.,* 409 Pa. 338, 186 A.2d 396 (1962); *Encelewski v. Associated—East Mortgage Co., supra.* Accordingly, appellant's claim in this appeal that the court of common pleas lacked personal jurisdiction is waived.

10. Appellant's counsel was served with a copy of appellee's petition to cite appellant for contempt and to enter judgment for support in arrears, and filed preliminary objections to the petition on June 13, 1979, the date of the hearing. Those objections, which were overruled by the court below, averred only that the court below lacked subject matter jurisdiction to enforce a private agreement providing for payment of alimony. Nowhere do the preliminary objections recite that personal jurisdiction was lacking. (Record at 80a–81a).

Appellant also maintains that the court below abused its discretion by entering judgment for arrearages in the amount of $7,700 without support in the record. This contention is spurious. The record reflects that, as of June 13, 1979, the date of the hearing herein, appellant had made six monthly payments of $200 and, therefore, had failed to make payments totalling $7,700 due under the order of December 15, 1978. (N.T. 10, June 13, 1979).[11]

Finally, appellant contends that the court below abused its discretion in issuing a bench warrant for his arrest when he failed to appear at the hearing on June 13, 1979. Appellant argues that: (1) the court lacked subject matter jurisdiction; (2) the court lacked *in personam* jurisdiction; and (3) the court was aware of the medical reason for appellant's failure to appear at the hearing. *See* note 4, *supra*. We have already determined that the first two of these arguments are unavailing. With respect to appellant's medical justification for his failure to appear, the record reveals that, when the court was informed on the day before the hearing that appellant was recuperating from a serious heart ailment, it offered to continue the matter if one-half of the support arrearage was paid. This offer was rejected. In these circumstances, we cannot hold that the court exceeded its authority in issuing the bench warrant the following day when, on the advice of his physician, appellant chose not to appear. *See generally Commonwealth v. Peters*, 178 Pa. Superior Ct. 82, 113 A.2d 327 (1955).

The order of June 15, 1979 is affirmed.

11. Pursuant to the order of December 15, 1978, appellant was required to make monthly payments of $1400, as well as quarterly payments of $500. *See* note 3 and accompanying text, *supra*. In rendering the order of June 15, 1979, the court below calculated the support in arrears by multiplying the balance unpaid each month ($1200) by the number of months from January, 1979, to June, 1979 (6), and adding the unpaid quarterly payment due on or before April 15, 1979 ($500).