Commonwealth *v.* Case, Appellant.

Argued December 10, 1962.  Before Rhodes, P. J., Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ.

202

reargument refused April 18, 1963.

George T. *Kelton*, with him *William J. Carlin*, and *Begley, Carlin, Mandio, Kelton & Popkin*, for appellant.

T. *Sidney Cadwallader, 2d*, with him *Cadwallader, Darlington & Clarke*, for appellee.

OPINION PER CURIAM, March 19, 1963:

The order of the court below is affirmed on the opinion of Judge MONROE of the Court of Quarter Sessions of Bucks County, as reported in 29 Pa. D. & C. 2d 405.

OPINION BY WOODSIDE, J., CONCURRING IN PART AND DISSENTING IN PART:

I concur with this court's conclusion that an order for the support of the defendant's wife was properly made for the reasons set forth in Judge MONROE's scholarly opinion, but I think under the circumstances the amount of the order was exorbitant.

Orders for the support of a wife are limited to one-third of the husband's income or earning power. This is the maximum allowed to the most worthy wife—one who has spent her life sacrificing to help an ungrateful husband accumulate his capital, develop his earning capacity and rear his children only to be cast aside when she has become needy, ill and old.

In the case before us, the relatrix owned and operated a dress shop for 12 years, going out of business *after* she left the defendant. At the hearing a few months later, she first denied, and then reluctantly admitted, that she had leased a storeroom to go back into the business. She lived with the defendant—in luxury—for less than a year. In order to marry him, she left and divorced her former husband after many years of married life, cooperated with the defendant in his leaving and divorcing his wife after many years of married life, and committed a fraud upon the courts of Alabama to get her divorce. Certainly, this relatrix is not entitled to the most liberal order possible. Nevertheless, her desertion and fraud proved to be a good investment for her. The defendant is ordered to pay $120 a week, plus taxes and mortgage installments, making a total of $8280 a year.[1]

The defendant's income tax return shows gross income of $25,983 in the last reported year. He pays his first wife $7200 a year under an agreement entered into with the relatrix's knowledge, and undoubtedly with her consent and for a purpose which she then thought was for her benefit. (The defendant paid both his wife and the relatrix's husband, who thereupon entered no objections to the fraudulently obtained divorce.) The trial judge concluded that the defendant had income in excess of the amount he returned for income tax purposes, and set his gross income at $34,823 and his net income, after taxes and the payments to his first wife, at $19,123.

A sound argument might be made that the order exceeds one-third of the defendant's earning capacity,

---

[1] Assuming half of the payment on the mortgage and taxes on the real estate held by entireties, and in which the wife resides, inures to the defendant's benefit, the relatrix is receiving $7260 a year.

but whether or not it does, I think it is excessive. I would reduce the weekly order to $75, which, added to the mortgage and real estate tax payments, would constitute an order of $5940 a year.

MONTGOMERY and FLOOD, JJ., join in this opinion.